S. Don HUCKABY, Plaintiff-Appellant,

v.

UNITED STATES DEPARTMENT OF the TREASURY, INTERNAL REVENUE SERVICE, Defendant-Appellee.

No. 85–2564.

United States Court of Appeals, Fifth Circuit.

July 23, 1986.

Charles J. Escher, Urquhart & Hassell, Edward D. Urquhart, Houston, Tex., for plaintiff-appellant.

Kathryn E. Rooklidge, Atty., Washington, D.C., Joseph A. Pitzinger, III, Dept. of Justice, Tax Div., Dallas, Tex., Glenn L. Archer, Jr., Asst. Atty. Gen., U.S. Dept. of Justice, Tax Div., Michael L. Paup, Chief, Appellate Sec., Richard W. Perkins, Atty., Washington, D.C., for defendant-appellee.

Before WILLIAMS, JOLLY, and HIGGINBOTHAM, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

The plaintiff and appellant, Don Huckaby, sought damages against the United States under 26 U.S.C. § 7431 for alleged unlawful disclosures of tax return information by Internal Revenue Service agents during an investigation. After trial, the district court held for the United States and dismissed the complaint. We reverse in part and affirm in part. We hold that

disclosures are authorized only pursuant to a written request or consent.

## I

### A.

This suit concerns two IRS agents' investigations of the plaintiff, Don Huckaby. The more substantial controversy concerns the activities of Special Agent Edmond Martin. In March 1983, the IRS began investigating Huckaby, President of Good Times Liquor, Inc., and some of his associates, seeking to determine whether Huckaby had aided in the preparation of false tax returns. The IRS assigned Martin to the case. On May 5, 1983, Martin met with Huckaby, informed him of the investigation, and requested some corporate records of Good Times Liquor, including bank records and invoices. Huckaby orally agreed to let Martin have the records, but he expressed his concern that Texas state law required him to keep the invoices on the premises so that they would be available for inspection by the Texas Alcoholic Beverage Commission (TABC).

Martin testified, and, though contested, the district court found as fact that Huckaby let him have the invoices on the understanding that he would make them available for any TABC inspection. Pursuant to their agreement, Martin took the invoices with him.

On May 20, 1983, when Catherine Landry of the TABC called Huckaby and requested access to some of his sales invoices, he told her that the IRS had the invoices because they were auditing him. Huckaby then called Martin and told him of Landry's request. Martin telephoned Landry, ascertained the records that she wanted, and delivered those records to Good Times Liquor for Landry to collect.

On June 9, 1983, Roland Weide of the TABC requested more sales invoices from Huckaby. Huckaby gave Martin's name and telephone number to Weide. Weide called Martin, and Martin delivered the invoices to Michael Dolezal of the TABC who sent them to Weide. Although Huckaby contested the point, the district court found as a fact that Huckaby authorized the disclosure by telling Weide to get the records from Martin.

Shortly thereafter, Philip Sanderson of the TABC contacted Martin to get more invoices from Good Times Liquor. Martin told Sanderson that Huckaby's consent would be necessary. Sanderson wanted to have Martin deliver the records to Charles Tucker of the TABC or to Huckaby. Notwithstanding his earlier understanding with Huckaby's counsel to avoid disclosure to the TABC, Martin appeared in person at Huckaby's office, informed Huckaby of the Sanderson request, and asked whether Huckaby wanted to take the records, or whether Martin should deliver them to Tucker. Huckaby testified that he told Martin he did not *know* what Martin should do. The district court credited Martin's testimony that Huckaby said that he did not *care* what Martin did. Martin then attempted to deliver the records to Tucker's office, but, since Tucker was not present, Martin kept the records. The records were eventually returned to Huckaby's counsel.

### B.

The second controversy concerns the actions of IRS Agent Robert Leyton. On two occasions Leyton visited the home of his acquaintances, William Crawford, and accountant, and Janet Crawford, and asked the Crawfords questions about Huckaby and his business associates. Leyton gave the Crawfords his telephone number, and asked them to call him if they heard anything about Huckaby. Leyton did not actually say that Huckaby was being investigated. The Crawfords, however, concluded from the interviews that the IRS was investigating Huckaby.

### C.

These two series of events eventually led Huckaby to file two federal actions: this claim before us for damages under section 7431 for Martin's and Leyton's alleged unlawful disclosures of tax return informa-

tion, and a petition to quash an IRS summons served on him. The district court dismissed the petition to quash, and later a district court in the Western District of Texas enforced the summons, holding that the IRS did not issue the summons in bad faith to assist the TABC in its investigation. We upheld the enforcement. *United States v. Huckaby*, 776 F.2d 564 (5th Cir. 1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1468, 89 L.Ed.2d 724 (1986).

In the section 7431 action before us today, the district court held that Martin did not violate section 6103 because he "was acting with an objective good-faith belief that the disclosure of the records to the TABC had been expressly authorized by plaintiff, and that such a disclosure was authorized by law." The district court also held that there was no evidence of unauthorized disclosure of tax information by Martin. As to Leyton, the district court held that he did not violate section 6103 because he did not disclose that the IRS was investigating Huckaby, nor did he disclose any information about Huckaby.

## II

Huckaby contends that the district court erred when it held that Martin did not improperly disclose tax return information to the TABC, a state agency. According to Huckaby, section 6103 clearly requires written consent by the taxpayer or a written request by the state agency to authorize disclosure of return information to a state agency. Huckaby further argues that Martin must have known of these requirements from the clear statute, an unambiguous Treasury regulation, and an explicit directive in an IRS manual; he therefore could not have had a good-faith belief that the statute authorized him to disclose information to the TABC pursuant to oral communications.

The United States first argues that the prior determination in the summons enforcement proceeding collaterally estops Huckaby from arguing that Martin and Leyton made improper disclosures and did not act in good faith. Alternatively, however, the United States argues that the Martin disclosures, if any, were not improper because the IRS merely honored Huckaby's request to make records available to the TABC. The United States argues that it should not be penalized for complying with the condition Huckaby imposed on the use of his records.

The United States contends that the legislative histories of sections 7431 and 6103 clearly show that these statutes were intended to protect a taxpayer's reasonable expectation of privacy. Based on that interpretation, the United States argues that none of the disclosures offended Huckaby's reasonable expectation of privacy. Finally, as to Martin's conduct, the United States argues that, even if he did improperly disclose return information, Martin acted under a good-faith interpretation of the statute under the standard of *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

As to Leyton's conduct, the United States argues that Leyton simply did not disclose any return information at all to the Crawfords because the Crawfords, at most, gained from Leyton only the *impression* that Huckaby was being investigated. The United States contends that this does not constitute a disclosure of return information.

## III

First we must address whether the district court's holding in the summons enforcement proceeding collaterally estops the issues raised in this lawsuit. Holding that it does not, we then discuss whether the district court erred in holding that Martin and Leyton did not disclose any return or return information in violation of section 6103. Holding that the district court erred in this respect, we must also resolve whether the violation or violations resulted from "a good faith, but erroneous, interpretation of section 6103." 26 U.S.C. § 7431(b). Finally, we examine the evidence to determine whether violations of sections 7431 and 6103 occurred.

**1046**

## IV

### A.

The judgment enforcing the summons against this taxpayer does not operate as collateral estoppel as to either the issue of unlawful disclosure or of Martin's good faith. Collateral estoppel bars subsequent relitigation of an issue only when: (1) the issue is identical to that involved in the prior action; (2) the issue was "actually litigated"; and (3) the previous determination of the issue was necessary and essential to the valid, final judgment in the case. *James Talcott, Inc. v. Allahabad Bank, Ltd.*, 444 F.2d 451, 458–59 (5th Cir.), *cert. denied*, 404 U.S. 940, 92 S.Ct. 280, 30 L.Ed.2d 253 (1971). The enforcement of the summons cannot satisfy these criteria.

Even though each proceeding may involve the same facts, the issues in the summons enforcement proceeding were not the same as the issues presented here. The relevant issues that were litigated in the summons enforcement proceeding were whether allowing enforcement would be an abuse of the court's process and whether the investigation lacked a legitimate purpose. *United States v. Texas Heart Institute*, 755 F.2d 469, 479–82 (5th Cir.1985). In this action, however, the issues presented are whether the IRS has made disclosures within the meaning of section 6103, whether there was a proper request or consent for those disclosures and whether the IRS conduct resulted from a good-faith interpretation of section 6103. Even though the district court may consider evidence of a section 6103 violation in a summons enforcement proceeding, it considers it only insofar as it demonstrates a lack of legitimate purpose for the investigation or an abuse of the district court's process. *Id.* at 479. Certainly, a determination of a section 6103 violation is not necessary to the judgment in the summons enforcement proceeding. Thus it is clear that the collateral estoppel argument advanced by the United States fails.

### B.

Section 6103 forbids the disclosure of return information. Return information includes the taxpayer's identity, the fact that the taxpayer is under investigation or subject to further investigation, and data that the IRS has collected about a return. 26 U.S.C. § 6103(a), (b). The statute, however, sets out exceptions allowing disclosure. Section 6103(c) generally allows the IRS to disclose information to a person that the taxpayer designates in a written request.[1] Section 6103(d) allows the IRS to disclose return information to state agencies upon a written request by the head of the state agency.[2] The Treasury Depart-

---

**1.** Section 6103(c) provides that:

> The Secretary may, subject to such requirements and conditions as he may prescribe by regulations, disclose the return of any taxpayer or return information with respect to such taxpayer, to such *person or persons as the taxpayer may designate in a written request for or consent to such disclosure,* or [to any other person at the taxpayer's request to the extent necessary to comply with the request for information or assistance made by the taxpayer to such other person]. However, return information shall not be disclosed to such person or persons if the Secretary determines that such disclosure would seriously impair Federal tax administration. (Emphasis added.)

We disagree with the suggested argument that these disclosures were authorized by the bracketed phrase concerning requests by the taxpayer for disclosure to "other persons" from whom the taxpayer has asked for information or assistance. First, it is implausible that this clause

could abrogate the statute's specific requirement that requests and consents be written. Second, the IRS itself has required a written request. *See* note 3, *infra.*

**2.** Section 6103(d) provides in pertinent part that:

> Returns and return information with respect to taxes imposed by chapters 1, 2, 6, 11, 12, 21, 23, 24, 31, 32, 44, 45, 51, and 52 and subchapter D of chapter 36 shall be open to inspection by, or disclosure to, any state agency, body, or commission, or its legal representative, which is charged under the laws of such state with responsibility for the administration of state tax laws for the purpose of, and only to the extent necessary, in the administration of such laws, including any procedures with respect to locating any person who may be entitled to a refund. Such inspection shall be permitted, or such *disclosure made, only upon*

ment has promulgated regulations based on these statutes.[3]

■ The point that is clear from these statutes and regulations is that the IRS cannot disclose return information to a state agency without some written communication.

■ The district court, relying on Huckaby's oral consent to Martin to make records available to the TABC, held that Martin made no unauthorized disclosures. As a matter of law, this conclusion is incorrect. The district court may have been misled by misreading section 6103(c), which provides that the taxpayer may authorize disclosure to persons designated "in a written request for or consent to such a disclosure." The district court may have concluded from the arrangement of the words that "written" modifies only "request"; thus, although a "request" must be in writing, a "consent" need not.[4]

This conclusion is incorrect for two reasons. First, it seems clear from Congress's manifest intent to restrict the availability of return information that "written" was intended to modify both "request" and "consent." The IRS has certainly interpreted the statute in that way, providing in

its regulations that a "request for or consent to disclosure must be in the form of a written document pertaining solely to the authorized disclosure." Treas.Reg. § 301.-6103(c)–1(a).

Second, the contrary interpretation, that requests must be in writing but consents may be oral, would lead to nonsensical and incongruous results. Such an interpretation assumes that confidentiality is more threatened by oral "requests" than by oral "consents," when the opposite may be true: requests are initiated by the taxpayer, but consents most often result from the initiative of the IRS. A written form in both requests and consents serves the same purpose—assuring the taxpayer's clear assent before return information is disclosed. Oral consents are no less subject to misinterpretation between the parties than oral requests. The case before us is a good example: the IRS claims that it had the taxpayer's request initially and that, in later instances, it had the taxpayer's consent. If requests and consents alike had been in writing, this controversy probably could have been avoided. To the extent that the district court relied on Huckaby's oral consent to authorize any of these disclosures, therefore, the district court was in error.

---

*written request by the head of such agency,* body or commission, and only to the representatives of such agency, body, or commission designated in such written request as the individuals who are to inspect or to receive the returns or return information on behalf of such agency, body, or commission. (Emphasis added.)

3. Treasury Reg. § 301.6103(c)–1(a), which discusses the phrase in section 6103(c) that pertains to disclosures "to such persons as the taxpayer may designate," provides in pertinent part that:

Section 6103(c) of the Internal Revenue Code applies to disclosures of return or return information (including taxpayer return information) to a person designated in a written request for or consent to disclosure. A *request* for *or consent* to disclosure *must be in the form of a written* document pertaining solely to the authorized disclosure. The written document must be signed and dated by the taxpayer who filed the return or to whom the return information relates. (Emphasis added.)

Treasury Reg. § 301.6103(c)–1(b), which discusses the bracketed phrase in section 6103(c),

note 1 *supra,* that pertains to disclosures "to any other person at the taxpayer's request to the extent necessary to comply with the request for information or assistance made by the taxpayer to such other person," provides in pertinent part that:

Section 6103(c) of the Code applies to requests made by the taxpayer to other persons (for example, members of Congress, friends or relatives of the taxpayer, and, when not acting as a taxpayer's representative, income tax return preparers) for information or assistance relating to the taxpayer's return or a transaction or other contact between the taxpayer and the Service.

4. We note that, even if the district court misread the statute in this respect, this does not fully explain the court's error. The IRS has vigorously argued that Huckaby imposed the condition, i.e. requested, that the documents be available to the TABC before he would give them to Martin. An oral "request" of this type would not authorize Martin's disclosures even under this misreading of the statute.

### C.

The United States will not be liable for Martin's disclosures, however, if those disclosures resulted "from a good faith, but erroneous, interpretation of section 6103." 26 U.S.C. § 7431(b).

■ In assessing the issue of good faith, both parties suggest that we use the standard of objective good faith applicable to executive immunity. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).[5] The holding of *Harlow* that certain officials of the executive branch of the United States are entitled to qualified immunity is irrelevant to the case before us today. *Harlow* recognized a personal immunity from suit, stemming from the need to protect executive officials so that they can perform their functions without undue fear of liability. 457 U.S. at 806, 102 S.Ct. at 2732. Such immunity does not constitute a finding that the officials did not perform the acts that would otherwise lead to liability, *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 397–98, 91 S.Ct. 1999, 2005, 29 L.Ed.2d 619 (1971) (reserving issue of immunity); it is an expression that public policy would not be served by allowing the officials to be held liable. *Harlow,* 457 U.S. at 813–14, 102 S.Ct. at 2735–36. In defining a section 7431 cause of action, Congress has already shielded Martin from liability:[6] Congress has made the United States liable for Martin's conduct. The issue of immunity, therefore, is not involved in this case.

■ We agree, however, with the parties' suggestion that the good-faith defense

in section 7431(b) should be judged by an objective standard analogous to that employed in *Harlow.* Because we have found no legislative history to elucidate Congress' intent as to the good-faith standard to be applied in section 7431(b), we find it instructive that *Harlow* would find officials acting in good faith when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. In the case before us, the relevant rights are those established under sections 6103 and 7431, and we ask whether a reasonable IRS agent would have known of rights provided by these sections, and of his own agency's applicable regulations and internal rules.[7] The statute and, most certainly, the regulations make clear that an IRS agent cannot turn over records to a state agency without a written request from the head of that state agency, or a written request or written consent from the taxpayer. 26 U.S.C. §§ 6103(c), (d); Treas. Reg. § 301.6103(c)–1. Furthermore, IRS manuals also incorporate this understanding of the disclosure laws. Internal Revenue Manual—Administration § 312, *Requirement That Authorization Be Written.* Martin also testified that his special agent's handbook contained disclosure restrictions. The question then, as we have noted, is whether a reasonable IRS agent would be acquainted with the statute, and his own agency's interpretation of the statute as reflected in its regulations and manuals.

---

**5.** The Sixth Circuit, in an opinion we find unclear, discussed *Harlow* immunity in connection with the exception for a "good faith, but erroneous, interpretation of section 6103." *Davidson v. Brady,* 732 F.2d 552, 553–54 (1984). In that case, however, the IRS agents could have been held personally liable. *See* note 6, *infra.*

**6.** The Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. 97–248, 96 Stat. 324, repealed 26 U.S.C. § 7217, which had provided a cause of action against "any person," presumably including IRS agents, as to disclosures made after September 3, 1982. Section 7431, also created by the 1982 Act, allows suits for damages to be brought against the United States instead.

**7.** There is no evidence here that Martin examined the statutes, the regulations or applicable IRS manuals. In fact, Martin testified that he had not read the disclosure statutes or manuals before making the disclosures. Martin also testified that before making the disclosures he had not discussed them with an IRS disclosure officer, whose purpose is to advise agents on disclosure restrictions. Martin explained his understanding as, "But if a taxpayer, which in this particular instance which you're getting to, authorizes me to do this, consensually—I mean, then there is no need for the written."

The answer is self-evident. A reasonable IRS agent can be expected to know the provisions of sections 6103 and 7431, as they may be further clarified by IRS regulations and other IRS interpretations. Since Martin should have known of this interpretation and followed it, his contrary interpretation is not in good faith under section 7431(b).

## V

We now turn to the district court's findings of fact and conclusions of law, as well as the record evidence relevant to whether these disclosures occurred, to determine whether remand is necessary. In its findings of fact and conclusions of law, the district court clearly misapprehended the law to be applied to the facts before it. The district court found as a fact that no *unauthorized* disclosures occurred in any of the enumerated instances, but did not address whether disclosures *in fact* occurred in any of these instances. If our analysis stopped at this point, we would have to remand for further consideration in the light of our opinion today. We do not stop here, however, but proceed to ascertain whether any evidence in the record before us supports Huckaby's claims.

Huckaby argues that Martin disclosed four items of return information: (1) the disclosure to Landry of the fact that Huckaby was undergoing an audit and criminal investigation, (2) similar disclosures to Weide, (3) the disclosure to Dolezal of Huckaby's invoices, and (4) the disclosure to Sanderson of the fact that Huckaby's records were in Martin's investigative file.

■ With respect to Landry, Martin testified that he identified himself to her as a special agent of the IRS, but that he did not tell her he was investigating Huckaby or give her any information regarding the investigation. Huckaby testified that he told Landry that the IRS was auditing him, but that he did not reveal he was under criminal investigation. Neither party produced any other evidence concerning this alleged disclosure. No evidence therefore suggests that Martin told Landry that Huckaby was under civil or criminal investigation.

Martin's identification of himself to Landry as a special agent did not, in itself, inform Landry that Huckaby was being investigated. Landry sought corporate records, not personal records: thus, Martin's possession of them could tell Landry only that Martin was concerned with the corporation. Furthermore, Martin could have been holding Huckaby's records as part of an investigation of someone else, as in part, he was doing.

Finally as far as Landry is concerned, Huckaby testified that he gave her the records after Martin had returned them to him. Huckaby, not Martin, therefore disclosed his records to Landry. In sum, Huckaby adduced no evidence that Martin disclosed return information to Landry, with or without authorization.

■ With respect to Weide, Martin denied telling Weide that he was a special agent, or that Huckaby was under any type of investigation. Weide testified that he did not remember Martin telling him that Huckaby was under investigation, but he did remember that Martin told him no details of an investigation. Huckaby testified that he told Weide only what he told Landry. Consequently, again Huckaby adduced no evidence to show that Martin told Weide that Huckaby was under civil or criminal investigation.

Huckaby, however, attaches significance to a later conversation between Martin and Weide. After the events discussed, Martin called Weide again, and apparently told him that he should have made notes of their previous conversation, because Martin might have violated the disclosure laws. In the summons enforcement proceeding, Weide said, "At that time he told me that he was probably supposed to, you know, wasn't supposed to do this or something, and that I should make notes of things like this and that we probably would have to go to court on this thing because of the disclosure law, which I didn't understand at the time." Irrespective of any significance

that Huckaby may attach to this conversation, it is not evidence that return information was disclosed. This is especially true in the light of Weide's later testimony in this proceeding that Martin did not admit any wrongdoing in this conversation.

■ With respect to Martin's actually providing Huckaby's records to Dolezal, no remand is required because liability is clearly established. The district court found and the IRS does not contest that those records were provided to the TABC without Huckaby's written request or consent. We have already held that an oral communication is insufficient, and that Martin did not act in good faith under section 7431(b). Martin therefore improperly disclosed return information in violation of section 6103 when he provided those records. Huckaby is therefore entitled to statutory damages of $1,000 for this disclosure under section 7431(c)(1)(A).

■ Lastly, concerning Sanderson, Martin testified that he did not tell Sanderson that Huckaby was under investigation. Huckaby also denied telling him. Again, we have no evidence that Martin disclosed any return information to Sanderson. Martin certainly *tried* to disclose the records when he attempted to deliver them to Tucker, but when Tucker was not present to receive them, Martin returned the records to Huckaby. Sections 6103 and 7431 make no provision for attempted disclosures. Huckaby also argues that Martin violated section 6103 by disclosing to Sanderson that Huckaby's records were in Martin's investigative file. The evidence on this point shows that Sanderson already knew that Martin had the records at the time he spoke to Martin; Martin, therefore, was not the source of the alleged disclosure.

■ With respect to Agent Leyton's conduct, the question of consent does not arise. The district court clearly found as a fact that Leyton did not disclose any return information to the Crawfords. Leyton merely asked the Crawfords some questions about Huckaby. Under the circumstances of this case, the district court was not clearly erroneous in finding that the Crawfords' subjective conclusion was not evidence of a disclosure of return information. Thus, the district court's finding that Leyton did not improperly disclose return information is not clearly erroneous, and must therefore be upheld. *Anderson v. City of Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

■ Finally, Huckaby asks for punitive damages under section 7431(c)(1)(B) on grounds that the disclosures were willful and grossly negligent. It is clear from the facts before us that the disclosures here were neither willful nor grossly negligent. The district court found as a fact that Huckaby had orally authorized each disclosure. Even though Martin was negligent in failing to obtain written authorization, his conduct in the circumstances of this case, which the district court generally found was authorized by the taxpayer, does not justify punitive damages. Indeed, there was only one disclosure, for which we have awarded statutory damages of $1,000. In this one instance of disclosure, the evidence showed that Huckaby provided Weide with Martin's name and telephone number, and that, pursuant to earlier oral communications, Martin understood this to mean that Huckaby wanted him to provide the records.

## VI

We hold that Huckaby is entitled to statutory damages of $1,000 for the improper disclosure of his records to Dolezal of the TABC without written consent, together with costs and reasonable attorney's fees. We deny any recovery for punitive damages. We affirm the district court's judgment with respect to the alleged disclosures to Landry, Weide and Sanderson of the TABC that Huckaby was under civil and criminal investigation, because of the absence of evidence. We affirm the district court's judgment that Leyton did not improperly disclose return information to the Crawfords. We remand for the district court to determine costs and a reasonable

attorney's fee, and for entry of judgment in accordance with this opinion.

REVERSED IN PART, AFFIRMED IN PART, RENDERED IN PART, AND REMANDED.