Thomas J. SMITH, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 87–3067.

United States District Court, C.D. Illinois, Springfield Division.

Jan. 18, 1989.

---

Wayne R. Golomb, Springfield, Ill., for plaintiff.

James Lewis, Asst. U.S. Atty., Springfield, Ill., David C. Hickman, Trial Atty., Tax Div., Washington, D.C., for defendant.

OPINION

RICHARD MILLS, District Judge:

This is a unique case—presenting a singular scenario.

The Court has found no case law dispositive of the issues posited. The uncommon facts here involve the disclosure of tax return information by a federal government tax official to a state tax official; and the matter is before the Court on cross-motions for summary judgment.

## I—Facts

At the time of the disclosure, Ira Loeb was, and is still, the District Director for the Springfield District of the Internal Revenue Service. As such, he is the federal official chiefly responsible for the administration of the federal tax laws within the district. Plaintiff, Thomas Smith, was employed by the Illinois Department of Revenue and acted as the liaison official for the Federal–State Exchange Program (Program). The Program facilitates the exchange of confidential tax information between the IRS and the State of Illinois Department of Revenue (Revenue). As the liaison official, Smith was the contact point between the IRS and Revenue. During the relevant period, J. Thomas Johnson was the Director of the Illinois Department of Revenue.

In mid-October of 1984, information regarding Mr. Smith's tax delinquencies was brought to the attention of Mr. Loeb. Subsequently, Mr. Loeb received a memorandum from Eugene Winston, Chief of the Collection Division for the District, dated October 29, 1984. This memorandum stated that Mr. Smith had not filed a federal tax return for the years 1982 and 1983 and that he had outstanding liabilities for the tax years 1980 and 1981. After receiving this information, Mr. Loeb determined that it indicated a potential state tax violation

by Mr. Smith and that this delinquency reflected poorly on Mr. Smith's ability to carry out his liaison responsibilities. Mr. Loeb then decided that the IRS should request that Mr. Smith be relieved of his position as the liaison official.

To accomplish his goal, Mr. Loeb determined that the Director of the Department of Revenue of Illinois should be contacted directly. Cognizant of disclosure laws, however, Mr. Loeb consulted IRS counsel for their opinion of whether the disclosures about Mr. Smith could be made. It was determined by counsel that the disclosure could be made lawfully under 26 U.S.C. § 6103(d) of the Internal Revenue Code.[1] Counsel further advised Mr. Loeb on the implications of disclosure in light of *Rueckert v. Gore*, 587 F.Supp. 1238 (N.D.Ill. 1984),[2] which involved disclosures of federal tax return information to the Illinois Department of Revenue. After receiving clearance from the IRS counsel, Mr. Loeb personally provided Mr. Johnson, the Director of Revenue, with the Winston memorandum and requested that Mr. Smith be relieved of his liaison responsibilities. The filing of Mr. Smith's complaint ensued.

### II—Cross–Motions for Summary Judgment

■ Pursuant to Fed.R.Civ.P. 56(c), both parties have moved for summary judgment. Rule 56(c) mandates that summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The fact that cross-motions for summary judgment have been filed does not per se entitle the Court to dispense with the determination of whether questions of material fact exist. We must give no less careful scrutiny to the facts here than we would had only one

litigant moved for summary judgment. *See Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt*, 700 F.2d 341, 349 (7th Cir.), *cert. denied*, 464 U.S. 805, 104 S.Ct. 53, 78 L.Ed.2d 72 (1983). Having done so, however, we conclude that this cause is properly decided as a matter of law.

### III—Section 6103(d) Violation

The parties agree, and the Court concurs, that the operative section of the Code is section 6103. The pertinent subsections of that section state:

(a) General Rule.—Returns and return information shall be confidential, and except as authorized by this title—

(1) no officer or employee of the United States

\*    \*    \*    \*    \*    \*

shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section. For purposes of this subsection, the term "officer or employee" includes a former officer or employee.

\*    \*    \*    \*    \*    \*

(d) Disclosure to State tax officials.— Returns and return information with respect to taxes imposed by chapters 1, 2, 6, 11, 12, 21, 23, 24, 31, 44, 51, and 52 and subchapter D of chapter 36, shall be open to inspection by or disclosure to any State agency, body, or commission, or its legal representative, which is charged under the laws of such State with responsibility for the administration of State tax laws for the purpose of, and only to the extent necessary in, the administration of such laws, including any procedures with respect to locating any person who may be entitled to a refund.

---

1. All references to the "Code" are to the Internal Revenue Code of 1954 as amended, unless otherwise noted. This is the pertinent Code for the time period at issue. The Code has since been redesignated as the Internal Revenue Code of 1986. *See* Tax Reform Act of 1986, Pub.L. No. 99–514, 100 Stat. 2085.

2. *Rueckert* was subsequently affirmed in *Rueckert v. IRS*, 775 F.2d 208 (7th Cir.1985). The appellate court decision is inapposite with respect to the advice given Mr. Loeb as the appellate court opinion was issued subsequent to the events in question here.

Such inspection shall be permitted, or such disclosure made, only upon written request by the head of such agency, body, or commission, and only to the representatives of such agency, body, or commission designated in such written request as the individuals who are to inspect or to receive the return or return information on behalf of such agency, body, or commission. Such representatives shall not include any individual who is the chief executive officer of such State or who is neither an employee or legal representative of such agency, body, or commission nor a person described in subsection (n).

Section 7431 of the Code[3] authorizes suit against the United States where "any officer or employee of the United States knowingly, or by reason of negligence, discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103...." *Id.* § 7431(a)(1). However, the section provides that no liability will arise if the disclosure results from "a good faith, but erroneous, interpretation of section 6103." *Id.* § 7431(b).

■ Thus, section 6103 has three requirements: (1) disclosures are made only to the extent necessary for the administration of state tax laws; (2) disclosures are made only upon written request by the head of the agency charged with the administration of the state tax laws; and (3) disclosures are to be made only to the designated representative of the requesting agency.[4]

■ There is no dispute as to the first and third requirements. The disclosure here was made in furtherance of the administration of the state tax laws. Plaintiff does not argue otherwise. The third requirement provides a peculiar situation in this cause but is resolvable. The third requirement necessitates that disclosures be made to the designated representative of the requesting agency. Here, that designated agent was Plaintiff. Mr. Loeb provided the information directly to Mr. Johnson, thus bypassing Plaintiff. This is a situation which simply was not anticipated by section 6103. As Plaintiff is the designated agent of Mr. Johnson and because Plaintiff was the target of the disclosure, the Court finds no violation of section 6103 on the part of Mr. Loeb in making the disclosure directly to Mr. Johnson (subject to compliance with the second requirement). We must emphasize, however, that this deviation from the requirements of section 6103(d) is condoned only in consideration of the peculiar facts of this case.[5]

■ The contentions of the parties mainly focus on the second requirement of section 6103(d)—that disclosures be made only upon written request by the head of the agency charged with the administration of the state tax laws. The Government contends that this requirement is met by the Agreement on Coordination of Tax Administration (Coordination Agreement) and the Implementation Agreement Between the Illinois Department of Revenue and the Internal Revenue Service (Implementation Agreement). The IRS *Disclosure of Official Information Handbook* (1987) defines the Coordination Agreement as "[t]he 'basic' agreement [which] provides for the mutual exchange of tax data between a specific State tax agency and the Service. Its provisions encompass the required procedures and safeguards. Arrangements for continuing disclosures are made by means of an 'implementing agreement'...." *Id.*

---

**3.** This section was added to the Code by the Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97–248, 96 Stat. 324.

**4.** The legislative history of section 6103 indicates that the purpose of the section is to "protect federal tax returns and return information from misuse by federal and state agencies." *Rueckert,* 587 F.Supp. at 1241. "In particular its goal was to stop various governmental agencies from using the IRS as a virtual 'lending library

of confidential tax information.'" *Id.* (quoting remarks of Senator Weiker).

**5.** Even if the Court were to find a violation of section 6103(d) based on the failure to follow this requirement, we would find that the violation arose from a "good faith, but erroneous, interpretation of section 6103," 26 U.S.C. § 7431(b), under the objective standard set forth in *Huckaby v. United States Dep't of Treasury, IRS,* 794 F.2d 1041, 1048 (5th Cir.1986).

at 1272–382, ¶ (33)–41(1). The *Handbook* further provides that an "implementing agreement will be developed and negotiated with each State tax agency which wishes to receive Federal returns and return information on a continuing basis pursuant to a basic agreement. It will supplement the basic agreement by specifying the detailed working arrangements and items to be exchanged...." *Id.* at 1272–383, ¶ (33)–42.1(1).

The Government contends that section 6103's written request requirement is met by the Coordination Agreement and the Implementing Agreement which "constitute standing written requests for certain types of information." This is correct, in that these agreements were promulgated in response to Congress' mandate in section 6103(d) that disclosures be made to state tax officials only under certain conditions. However, having invoked the agreements as satisfying one of section 6103(d)'s requirements, the Government must show that the agreements' requirements were followed in the same way section 6103(d)'s requirements must be followed. In essence, the agreements have become part and parcel of section 6103(d); thus, failure to follow the requirements of the agreements is a failure to follow the requirements of section 6103(d)—thereby constituting a violation of that section.

Therefore, the pertinent section of the Implementing Agreement must be examined to determine whether its requirements were complied with. The parties agree that the operative section of the Implementing Agreement is section II(A)(6) which states:

> When the IRS official has a Federal return and/or return information which will not be transmitted to the agency under other provisions of this agreement but which may be evidence of any intentional or inadvertent understatement or violation of any State tax described in Section 3 of the Agreement on Coordination of Tax Administration, the IRS liaison official *shall*, if the understatement of tax potentially exceeds [certain threshold amounts], or if the understatement or violation is potentially a criminal tax vio-

lation, contact the Agency liaison official and describe the return and/or return information (without disclosing identifying information) in sufficient detail to ascertain the agency's need and potential use of the return or return information. If, in the judgement of the IRS liaison official, the Agency has a need and use of the return and/or return information, he/she *shall* then provide the agency liaison official sufficient information, including identifying information, to make a specific request for the return and/or return information as provided by section 8 of the Agreement on Coordination of Tax Administration and by section VIII of this implementing agreement. (Emphasis added.)

First, we note the mandatory language of the section through the use of the word "shall" in two operative places within the section. Second, the Court counts no less than seven requirements within the section: (1) the IRS liaison official *must* contact the state agency liaison official; (2) describe the return information; (3) *without* disclosing identifying information; (4) to ascertain the agency's need and potential use of the information; (5) then determine whether the agency has a need and use of the information; (6) then the IRS official must convey identifying information to the state agency; (7) such that the state agency may make a specific request for the information. This may all seem a rather cumbersome approach to the transmittal of return information. However, it is the IRS which developed this procedure in response to the Congressional mandate to do so. 28 U.S.C. § 6103(p)(1) ("Requests for the inspection or disclosure of a return or return information and such inspection or disclosure shall be made in such manner and at such time and place as shall be prescribed by the Secretary."). Its purpose is to protect the privacy of individuals from unwarranted intrusion into their tax matters and to create a "paper trail" where such intrusion is made or attempted.

By his own admission, in his affidavit, Mr. Loeb ignored every one of these requirements. He states that he was "cogni-

zant that this matter would require a determination that disclosure of Mr. Smith's Federal return information to the Illinois Department of Revenue was authorized by I.R.C. § 6103(d) and the exchange of the agreements thereunder...." Declaration of Ira Loeb, at 3, ¶ 9 (Dec. 2, 1987). He further states that he consulted with IRS counsel who determined that

> a proper basis for disclosure was authorized under I.R.C. § 6103(d), which provides for disclosure of Federal return information to a State tax agency for the purpose of the administration of the State tax laws, and Section IIa6 of the Implementing Agreement which sets out the procedures to be followed in making a disclosure under I.R.C. § 6103(d).

*Id.* ¶ 10.

Thus, Mr. Loeb was fully aware of the requirements to be followed in a disclosure situation involving section 6103(d) of the Code and section II(A)(6) of the Implementing Agreement. Yet, instead of following these procedures, he simply "personally provided on October 29, 1984, Mr. Johnson, Director of the Illinois Department of Revenue, with a copy of Mr. Winston's memorandum discussing Mr. Smith's Federal tax information...." *Id.* at 4, ¶ 13.

We discern no ill-motive in Mr. Loeb's action. In fact, his watchdog sense of responsibility is entirely laudible—yet his plan of action was ill-conceived. The IRS must be held accountable for compliance with its own rules—particularly in an area such as this where the privacy rights of individual citizens are at stake and can fall in harm's way.

In defense of Mr. Loeb's actions, the Government first argues that "Mr. Loeb did not need to make a preliminary disclosure (without identifying information) because he knew that the disclosure was authorized for tax administration purposes." This argument is meritless because it assumes Mr. Loeb has the discretion to make such a determination. The plain language of the Implementation Agreement leaves no doubt that Mr. Loeb is without such discretion. The Agreement makes the preliminary disclosure mandatory.

Next, the Government argues that since there was a standing request for this type of information, Mr. Loeb knew that it was wanted by the State. Again, this argument is without merit. Mr. Loeb has no discretion to determine what information is "wanted by the state." Further, the function of the standing written request is only to set in motion the transmittal procedures, not to authorize transmission (until the procedures have been complied with).

Next, the Government contends that "there was no need for any specific request from the State unless and until the State wanted to obtain plaintiff's tax returns or audit information." The agreement provides for the transmittal of "return and/or return information." Clearly, that is the type of information which Loeb gave to Johnson about Plaintiff. From the plain language of the Agreement, identifying information may be disclosed *only* after a need and use evaluation has been made and only for the purpose of allowing the state agency to make a "specific request." This serves the purpose of creating the "paper trail" to establish the legitimacy or illegitimacy of the disclosure and to keep the disclosure to the minimum amount of information needed by the state agency. *See Handbook,* at 1272–382, ¶ 33(30).

Lastly, the Government argues that, "while it may be useful to require preliminary disclosures, any violation of the statute must be based on the fact that the disclosure was made of information that was not necessary in the administration of the State tax laws." This argument typifies the cavalier attitude of Mr. Loeb toward the required procedures. Not only are the transmittal procedures "useful," they are mandatory by their own terms. The IRS *Handbook* states: "Congress has recognized the importance of this exchange program by permitting the disclosure of certain confidential Federal tax information to State agencies for tax administration purposes. However, Congress balanced this disclosure authority with additional requirements designed to safeguard Federal tax information against misuse and unauthorized disclosure." *Id.* at 1272–381,

¶ 33(10)(1). The Court cannot sit idly by while these safeguards are openly ignored.

Finally, we disagree that a violation of section 6103(d) can occur only under the "administration of the tax laws" requirement. As found above, there are three requirements of section 6103(d). A violation of any one constitutes a violation of that section for section 7431 purposes.

### IV—Good Faith Defense

 As an alternative ground to avoid liability, the Government argues that if there was a violation of section 6103(d), no liability should arise because the disclosure resulted from a good faith interpretation of section 6103(d). Code section 7431(b) provides: "No liability shall arise under this section with respect to any disclosure which results from a good faith, but erroneous, interpretation of section 6103." The Government cannot avoid liability by virtue of the good faith defense for two reasons. First, the section is inapplicable because there was no good faith but erroneous "interpretation" of section 6103. Mr. Loeb knowingly ignored a number of the requirements necessary to make a proper disclosure. There was no "interpretation" involved.

However, to the extent that it can be argued that Mr. Loeb "interpreted" the section as not requiring the procedures he ignored, the good faith defense is inapplicable. In *Huckaby v. United States Treasury Dep't, IRS*, 794 F.2d 1041, 1048–49 (5th Cir.1986), the court held that a party's good faith should be judged by an objective standard. As here, the *Huckaby* court had to decide "whether a reasonable IRS agent would have known of the rights provided by the sections, and of his own agency's applicable regulations and internal rules." *Id.* at 1048. Here, the Implementing Agreement makes abundantly clear the procedures which were to be followed.

Further, Mr. Loeb, by affidavit stated: "In accordance with my overall responsibility for the management of the Springfield District, I have often found it necessary to address the confidentiality and disclosure provisions contained in I.R.C. § 6103. This statute was enacted in 1976, at a time when I held my current position." Obviously, Mr. Loeb is no stranger to the disclosure procedures. "A reasonable IRS agent can be expected to know the provisions of sections 6103 and 7431, as they may be further clarified by IRS regulations and other IRS interpretations." *Huckaby*, 794 F.2d at 1049. As Mr. Loeb knew of the disclosure procedures in the Implementing Agreement and simply failed to follow them, his contrary interpretation is not in good faith under section 7431(b).

*Ergo*, Plaintiff's motion for summary judgment is ALLOWED. Conversely, Defendant's motion for summary judgment is DENIED.