IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-20543
_____

RONALD G. HARRIS; SUSETTE M. HARRIS,

Plaintiffs-Appellants,

versus

UNITED STATES OF AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court for
the Southern District of Texas
(USDC No. H-99-CV-1940)
_____

April 17, 2002

Before KING, Chief Judge, REAVLEY and WIENER, Circuit Judges.

PER CURIAM:[*]

Ronald and Susette Harris appeal the summary judgment entered against them in

their suit against the United States for wrongful collection of taxes and wrongful

disclosure of tax information. We affirm.

_____

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should
not be published and is not precedent except under the limited circumstances set forth in
5TH CIR. R. 47.5.4.

A.     Wrongful Collection

The district court concluded that the wrongful collection claims were barred by the applicable two-year statute of limitations, 26 U.S.C. § 7433(d)(3). The suit was filed on June 21, 1999. On appeal, the Harrises argue that their wrongful collection claims were not time-barred insofar as they asserted a claim for wrongful governmental conduct occurring on or after June 19, 1997. They abandon all other wrongful collection claims on appeal. The government more or less concedes that the Harrises are correct in this regard, because June 19, 1997 was a Saturday, and under Fed. R. Civ. P. 6(a), the deadline for filing a claim was extended to the following Monday, in this case June 21, 1999.

However, we agree with the government that we should not disturb the judgment because an alternative basis for dismissing this claim on the merits exists. We will not reverse a judgment if the district court can be affirmed on any ground, regardless of whether the district court articulated the ground. United Indus., Inc. v. Simon-Hartley, Ltd., 91 F.3d 762, 765 n.6 (5th Cir. 1996). "We are free to uphold the district court's judgment on any basis that is supported by the record." Zuspann v. Brown, 60 F.3d 1156, 1160 (5th Cir. 1995).

The Internal Revenue Code provides taxpayers with a cause of action for damages against the United States where "any officer or employee of the Internal Revenue Service recklessly or intentionally disregards any provision of" the Code. 26 U.S.C. § 7433(a).

2

The Harrises argue that Internal Revenue Service (IRS) agent Carabeth Luckey violated section 7122 of the Code, 26 U.S.C. § 7122. Section 7122(a) provides:

> The Secretary may compromise any civil or criminal case arising under the internal revenue laws prior to reference to the Department of Justice for prosecution or defense; and the Attorney General or his delegate may compromise any such case after reference to the Department of Justice for prosecution or defense.

We interpret this statute to mean that once the case is turned over to the Department of Justice (DOJ), the authority to settle the case rests with the DOJ rather than the IRS.

As we understand the wrongful collection claim relating to events occurring on June 19, 1997 and thereafter, the Harrises complain that agent Luckey and perhaps others acted in violation of the Code in the manner they handled a settlement offer from the Harrises prior to the sale of their house to partially satisfy the tax judgment. They allege, for example, in paragraph 29 of their amended complaint that "Officers Carabeth Luckey, Chief Felix Carrillo, Group Manager Barbara Howze, [an] unknown official of the Department of Justice and others in connection with collection did recklessly or intentionally disregard" § 7122 and "rejected the Harris' offer of $45,000.00 by asserting that the Department of Justice had authority pursuant to" § 7122.

Even under a liberal construction of the complaint, see Brinkmann v. Johnston, 793 F.2d 111, 112 (5th Cir. 1986) (noting that pro se complaints are construed liberally), we conclude that summary judgment was warranted on the wrongful collection claim. The case had been referred to the DOJ long before June 19, 1997, and the DOJ therefore had authority to settle the claim. To the extent the Harrises claim otherwise they are

3

legally mistaken. The Harrises failed to demonstrate any basis under which the DOJ was under a statutory obligation to settle the case for less than the amount of the judgment for unpaid taxes. The 1993 judgment far exceeded the settlement offer from the Harrises. To the extent the Harrises are arguing that Luckey, an IRS agent, had no authority to convey settlement-related communications, such communications do not constitute a statutory violation. The authority of the DOJ to settle the case under § 7122(a) does not in our view prohibit an IRS agent from conveying settlement communications to and from the DOJ.

To the extent that the Harrises are arguing that Luckey failed to communicate their settlement offer to the DOJ, we do not think such a failure constitutes a statutory violation in these circumstances. The record indicates that the Harrises had attempted to settle their tax liability directly with the DOJ as early as 1993. The record also contains an affidavit from Luckey indicating that she had discussed settlement with her superiors and had been told that the DOJ would not accept a settlement offer of $45,000 the Harrises were proposing. The Harrises do not persuade us that Luckey was under a statutory obligation to convey a settlement offer she believed and had been told the DOJ would reject, when the Harrises were free to do so themselves. Further, the Harrises failed to show, under this theory of liability, that the DOJ would have accepted their settlement offer if it had been conveyed, or that they were forced to settle for a larger amount because their initial offer was not communicated, and hence failed to show

4

"actual, direct economic damages sustained by the plaintiff as a proximate result of the" conduct of Luckey under 26 U.S.C. § 7433(b)(1).

B.     Wrongful Disclosure

With regard to the wrongful disclosure claim under 26 U.S.C. § 7431, applicable to violations of the confidentiality requirements of 26 U.S.C. § 6103, we agree with the district court's analysis of this issue. The comments of IRS spokesman Holmes made to the Conroe Courier reporter were of a general nature, were not based on personal knowledge of the Harrises' "return information" under 26 U.S.C. § 6103(b)(2), and do not constitute the disclosure of such. Holmes was instead discussing general IRS policies.

The record indicates that IRS officer Luckey was the source of the statement in the article that "IRS agents on hand . . . confirmed that the taxes owed by the Harrises for a five-year period beginning in 1978 totaled in the 'hundreds of thousands of dollars.'" To the extent that the public record federal court judgment, on file with the county real estate records as well, was the "immediate source" of this disclosed information, a violation of § 6103 did not occur. See Johnson v. Sawyer, 120 F.3d 1307, 1321 n.1, 1323 (5th Cir. 1997). In her affidavit Luckey stated:

> I explained [to the reporter] that there was a judgment on record in the Montgomery County Court House which was a matter of public record and that he could obtain a copy from the clerk. I explained that the recorded judgment listed the plaintiffs' liability which, beginning in 1978, totaled in the amount of hundreds of thousands of dollars.

5

To the extent that there was a material issue of fact as to whether the immediate source of the disclosure of the Harrises' tax liability was the judgment itself, we agree with the district court that the disclosure was nevertheless subject to the good faith defense of § 7431(b). We have little to add to the district court's analysis, but make the following observations to respond to certain arguments raised on appeal.

The Harrises argue that Johnson and its rejection of a general "public records" exception to § 6103 was already clearly established at the time of the conduct in issue, because the district court in Johnson had already ruled. In Huckaby v. United States, 794 F.2d 1041, 1048 (5th Cir. 1986), we held that the good faith defense under § 7431(b) is analogous to the civil rights qualified immunity defense, which looks to whether the official violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Id. (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Under analogous civil rights law, we have stated that in determining whether a right is clearly established, we are confined to precedent from our circuit or the Supreme Court. Boddie v. City of Columbus, 989 F.2d 745, 748 (5th Cir. 1993). Therefore, the district court's decision in Johnson did not in our view "clearly establish" the absence of a public records exception for purposes of the § 7431(b) good faith exception. To the extent that uncertainty might exist on this question, we should find the good faith exception applicable, since the good faith exception limits the government's waiver of sovereign immunity, and such waivers must be strictly construed in favor of the government. United States v. Nordic Village, Inc., 503 U.S. 30, 34 (1992).

6

The Harrises also argue that the government waived the good faith defense by failing to assert it in its answer. The government did assert the defense in its motion to dismiss and for summary judgment, filed before the district granted plaintiffs leave to file an amended complaint. Regardless, we again note that the good faith defense is a limitation on the government's waiver of sovereign immunity. Absent a waiver of sovereign immunity the district court had no jurisdiction. Truman v. United States, 26 F.3d 592, 594 (5th Cir. 1994). Challenges to subject matter jurisdiction can be raised at any time and sua sponte by the court. Johnston v. United States, 85 F.3d 217, 218 n.2 (5th Cir. 1996). The court of appeals has a duty to consider, sua sponte if necessary, the basis of the district court's jurisdiction. Solsona v. Warden, F.C.I., 821 F.2d 1129, 1132 n.2 (5th Cir. 1987).

AFFIRMED.