**Scott McLARTY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Nos. 3–89 CIV 538, 3–89 CIV 539.**

United States District Court, D. Minnesota, Third Division.

July 3, 1990.

Waller, Mark & Allen by Gregg A. Greenstein, Denver, Colo., for plaintiff.

U.S. Dept. of Justice by Stuart D. Gibson, Washington, D.C., for defendant.

## ORDER

ALSOP, Chief Judge.

The above entitled matter came before the court on June 22, 1990, on defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56(b).

## I. STANDARD OF REVIEW

The Supreme Court held that summary judgment is to be used as a tool to isolate and dispose of claims or defenses which are either factually unsupported or which are based on undisputed facts. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–324, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265 (1986); *Hegg v. United States,* 817 F.2d 1328, 1331 (8th Cir.1987). Summary judgment is proper, however, only if examination of the evidence in a light most favorable to the non-moving party reveals no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The test for whether there is a genuine issue over a material fact is two-fold. First, the materiality of a fact is determined from the substantive law governing the claim. Only disputes over facts that might affect the outcome of the suit are relevant on summary judgment. *Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512; *Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc.,* 824 F.2d 582, 585 (8th Cir.1987). Second, any dispute over

material fact must be "genuine." A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512. It is the non-moving party's burden to demonstrate that there is evidence to support each essential element of his claim. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

## II. FACTUAL BACKGROUND

In 1987, then Assistant United States Attorney for the District of Minnesota, Donald Lewis, was assigned to prosecute Joseph P. Gorman for violations of the criminal provisions of the Internal Revenue Service ("IRS") laws. IRS Special Agent Patrick Henry was assigned to assist him. After the indictment, the case was assigned to Senior United States District Judge Edward J. Devitt.

On March 30, 1987, plaintiff Scott McLarty filed an application for admission *pro hac vice* to defend Gorman in the criminal case. At about the same time, Lewis received a teletype that the United States Attorney for the Northern District of New York had sent to U.S. Attorney offices across the nation. It asked for information concerning disciplinary proceedings against McLarty and referred all inquiries to Assistant U.S. Attorney Craig Benedict.

Lewis then contacted Benedict to determine if he had any information that would bear on plaintiff's application for admission *pro hac vice*. As a consequence, Benedict sent Lewis a packet of information about the plaintiff. Among the documents was a copy of a May, 1985 internal IRS memorandum that stated, *inter alia*, that as of May, 1985 the IRS had no record that the plaintiff had filed his federal income tax returns for 1980 and 1981.

On April 10, 1987, Lewis wrote to Judge Devitt concerning McLarty's application and enclosed the IRS memorandum as well as certain other documents he received from Benedict. McLarty's admission hearing was held on April 13, 1987. Prior to the hearing, Lewis asked Special Agent Henry to provide him with transcripts of the plaintiff's income tax accounts for re-

cent years. In response, Henry obtained a transcript of the plaintiff's tax accounts for 1982 through 1985 and provided it to Lewis. Judge Devitt made no inquiry into McLarty's filing status at the hearing and Lewis, at that time, did not disclose any information from plaintiff's tax transcripts. Within a few days, however, Judge Devitt's office contacted Henry and inquired whether plaintiff was current with his federal tax obligations. Henry then contacted Lewis and relayed the inquiry whereupon Lewis wrote Judge Devitt and enclosed copies of transcripts of the plaintiff's 1982–1985 income tax accounts. Lewis sent copies of the letter and enclosures to plaintiff and his counsel, Bruce Hanley.

In orders entered April 29 and June 8, 1987, Judge Devitt denied plaintiff's application to defend Gorman in the criminal tax matter pending before the court. Plaintiff subsequently filed this suit alleging wrongful disclosure of his tax information in violation of 26 U.S.C. § 6103.

## III. ANALYSIS

The parties have agreed that the present motion relates only to Special Agent Henry's disclosure of plaintiff's 1982–1985 income tax transcripts to Lewis and Lewis's subsequent disclosure of this information to Hanley and Judge Devitt.

McLarty argues these disclosures violated 26 U.S.C. § 6103. Defendant counters that section 6103 specifically authorized the disclosures. In the alternative, it contends that if the disclosures were not authorized, plaintiff is not entitled to recover damages under section 7431 because the disclosures were made in good faith as defined by the statute.

### A. *Section 6103 Authorization*

■ The parties have agreed that the issue of whether the disclosures were authorized under section 6103 is a question of law that the court should decide. In addition, the facts relevant to this issue are undisputed. Therefore, although the plaintiff has not moved for summary judgment, the defendant concedes that if the court declines to grant defendant's motion for

summary judgment, it should find in plaintiff's favor on the authorization issue.

Section 6103(a) sets forth the general rule that: "[tax] returns and return information shall be confidential" and, except as authorized by section 6103, no officer or employee of the United States shall disclose any return or return information obtained in any manner in connection with his or her service as such an officer or employee. 26 U.S.C. § 6103(a).

Defendant cites to section 6103(h)(2) as authorizing Special Agent Henry's disclosure to Lewis and section 6103(h)(4) as authorizing the disclosures to Judge Devitt and Hanley.

Section 6103(h)(2) provides, in pertinent part, that:

> In a matter involving tax administration, a return or return information shall be open to inspection by or disclosure to officers and employees of the Department of Justice (including United States attorneys) personally and directly engaged in, and solely for their use in, any proceeding before a Federal grand jury or preparation for any proceeding before ... any Federal ... court, but only if—
>
> (A) the taxpayer is or may be a party to the proceeding ...

Section 6103(h)(4) provides, in pertinent part, that:

> A return or return information may be disclosed in a Federal ... judicial ... proceeding pertaining to tax administration, but only—
>
> (A) if [sic] the taxpayer is a party to the proceeding ...

Arguably, two different "proceedings" were involved in the case at hand: the actual tax case that McLarty wished to represent Gorman in and the *pro hac vice* hearing. The government argues that both proceedings entailed matters of "tax administration." While the underlying criminal case was a matter involving tax admin-

istration, it is clear that McLarty, as Gorman's potential attorney in that case, was not a "party to the proceeding." *See, e.g., Gilbert v. City of Little Rock,* 722 F.2d 1390 (8th Cir.1983), *cert. denied,* 466 U.S. 972, 104 S.Ct. 2347, 80 L.Ed.2d 820 (1984); *Moore v. McGraw Edison Co.,* 804 F.2d 1026 (8th Cir.1986). *Accord, First Iowa Hydro Elec. Coop. v. Iowa–Illinois Gas and Elec. Co.,* 245 F.2d 613 (8th Cir.1957), *cert. denied,* 355 U.S. 871, 78 S.Ct. 122, 2 L.Ed.2d 76 (1957), *reh'g denied,* 355 U.S. 921, 78 S.Ct. 339, 2 L.Ed.2d 281 (1958). Thus, plaintiff not being a party to the proceeding, the disclosures in the case at hand cannot be justified on the ground that they were authorized under sections 6103(h)(2) and (h)(4).

The defendant next urges that the plaintiff's application for admission to the court, for the "sole and limited purpose of representing Joseph P. Gorman in defense of criminal tax charges then pending against him, constituted a separate 'matter involving federal tax administration' under the statute." The government, however, concedes that any other type of *pro hac vice* hearing where the underlying case does not involve a tax matter would *not* be a matter involving tax administration as defined by the statute.[1] Thus, while the defendant would agree that the analysis involved in a *pro hac vice* determination itself is not a tax matter, it would argue that because this applicant wishes to represent a defendant in a tax matter, the *pro hac vice* determination became a tax matter.

The court cannot agree with the defendant's strained analysis. Although the defendant frames its argument in terms of the *pro hac vice* proceeding involving a matter of tax administration, in reality the government is again arguing that the disclosure was authorized because the underlying criminal case involved a tax matter. Therefore, the court's analysis regarding the underlying criminal proceeding applies;

---

**1.** In the oral argument on the present motion, defendant's attorney, Stuart Gibson, explained that the government's position was that McLarty's tax information could not be disclosed under the statute if he was applying to be admitted to represent someone in a non-tax matter. He stated that "if he [McLarty] came in to represent a murder suspect or mail fraud suspect or something, it wouldn't have anything to do with tax return information and these disclosures would clearly be unauthorized, we concede that."

the disclosures were not authorized by sections 6103(h)(2) and (4) because McLarty was not a party to the proceeding. Consequently, the court will grant partial summary judgment to the plaintiff, finding that sections 6103(h)(2) and (4) did not authorize the disclosures to Lewis, Devitt and Hanley.

It would appear that under no circumstances could a *pro hac vice* hearing be deemed a matter involving tax administration. While it is true that McLarty was a party to his application hearing, the plain language and statutory history of section 6103 preclude the court from finding that a *pro hac vice* application falls within the definition of a matter involving tax administration. The Third Circuit in *United States v. Bacheler*, 611 F.2d 443, 445–46 (3d Cir.1979), set forth section 6103's statutory history in detail. It noted that during the hearings for the bill:

> The Chairman of the Oversight Subcommittee of the House Ways and Means Committee stated "there is cause for alarm that tax returns are not being accorded the protection and care that taxpayers expect or that common sense warrants".... In addition, ... there was concern expressed that income tax information was being used extensively in federal courts just to attack the credibility of witnesses on related facts ... or was being used for political purposes in connection with "enemies lists and groups targeted for harassment through the Internal Revenue Service...."

*Id.* (cites omitted)

The court also observed that:

> Some of the practices most disquieting to those who urged reform involved the transmission of information between Internal Revenue Service and the Justice Department, including United States attorneys. Sections 6103(h) and 6103(i) were designed to cover those situations.

*Id.*

Thus, the disclosures in the present case are a prime example of practices that the 1976 Tax Reform Act was meant to curtail. Congress did not want the Internal Revenue Service in conjunction with the United States Attorneys to be able to use tax information to harass taxpayers. Clearly Congress did not intend to allow the Internal Revenue Service to release an attorney's return information to protest an admission application.

### B. *Good Faith Interpretation Defense*

■ Defendant next argues that plaintiff cannot collect damages under 26 U.S.C. § 7431 because the disclosures were made in good faith. Section 7431(a) provides for a civil cause of action for violation of section 6103 and states in part:

> (1) ... If any officer or employee of the United States knowingly, or by reason of negligence, discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103, such taxpayer may bring a civil action for damages against the United States in a district court of the United States.

Section 7431(b) provides that: "No liability shall arise ... with respect to any disclosure which results from a good faith, but erroneous, interpretation of section 6103."

In assessing the issue of good faith, defendant suggests the court use the standard of objective good faith applicable to executive immunity. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Thus, defendant contends that the proper question to the court is whether a reasonable IRS agent or Assistant U.S. Attorney would have been acquainted with the statute and whether a reasonable IRS agent or Assistant U.S. Attorney would have known that the disclosures violated those provisions.

The plaintiff, however, would have the court read the statute differently. First, plaintiff maintains that a plain reading of the statute allows the defendant to assert a good faith defense only if it alleges Henry and Lewis, in disclosing the tax forms, were relying on their understanding of section 6103. His argument is that the statute by phrasing the good faith defense in terms of an erroneous "interpretation" allows this defense only when the employee was in fact acquainted with the statute,

thus precluding a discussion of whether the employee should have been acquainted with the statute. Consequently, plaintiff contends that as a factual dispute exists as to whether Henry and Lewis "interpreted" the statute to allow the disclosures in question, summary judgment on the good faith defense is not warranted.

As to the remaining question of the employees' good faith reading of the statute, plaintiff would have the court apply a good faith standard containing objective and subjective components, i.e., whether Henry and Lewis knew or should have known the disclosures in question were not authorized by section 6103.

An examination of section 7431, the legislative history of section 6103, and the few cases applying the good faith defense, leads the court to concur with defendant's construction of 7431(b) regarding the "interpretation" issue and plaintiff's construction as to the relevant good faith standard.

Plaintiff urges that to invoke the statutory good faith defense, the defendant must separately prove that Lewis and Henry, prior to releasing McLarty's tax information, "interpreted" section 6103 to allow their disclosures. Thus, in addition to proving good faith, he would argue the government must prove the officials had some knowledge of section 6103 and relied on it to make the disclosures in question.

It is true that some courts have used the word "interpretation" in section 7431(b) to limit the scope of the good faith defense. They have not done so, however, to preclude the defense where the government cannot prove the official actually had knowledge of and interpreted section 6103. Rather, these courts read the word "interpretation" as describing the type of good faith necessary. For example, in *Husby v. United States*, 672 F.Supp. 442 (N.D.Cal. 1987), the defendant was claiming that the officials involved made a mistake when they released the information—that in general they were acting in good faith. The

court found, however, that such general claims of good faith did not trigger the section 7431(b) defense; to claim good faith the defendant must be arguing good faith in relation to the meaning of the statute. *Id.* at 445. *See also Smith v. United States*, 703 F.Supp. 1344, 1350 (C.D.Ill. 1989); *Schrambling Acc'y Corp. v. United States*, 689 F.Supp. 1001, 1007 (N.D.Cal. 1988).

Plaintiff's proposed construction of the good faith defense stretches the logical meaning of the phrase "good faith interpretation" and could lead to results Congress most likely did not intend. As the cases above show, use of the word "interpretation" merely ensures that defendants prove good faith in relation to the statute and not merely general good faith of the officials involved. To construe the statute otherwise would go far beyond the usual requirements of good faith defenses based on statutory interpretation.[2] As a result, plaintiff's proposed construction could lead to liability for disclosures by government officials who had no reason to know 26 U.S.C. § 6103 existed. The court cannot agree that Congress, in providing this defense, intended such a result. Consequently, the court refuses to make actual "interpretation" of section 6103 a requirement to the good faith interpretation defense.

■ As to the issue of good faith, defendant asks the court to apply the objective good faith standard set forth in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Plaintiff, on the other hand, contends that Congress intended a standard that takes into account the official's subjective as well as objective good faith. Under plaintiff's proposed subjective standard, the plaintiff could recover damages for unauthorized disclosures if Henry and Lewis knew or should have known of the provisions of section 6103 *and* knew or should have known the disclo-

---

**2.** For example, in good faith immunity cases, *Harlow* provides that while officials should normally know the law governing their conduct, if they claim extraordinary circumstances and can prove that they neither knew or should have known of the relevant legal standard, the defense should be sustained. *Harlow*, 457 U.S. at 819, 102 S.Ct. at 2738.

sures were unauthorized.[3] Thus, in attempting to prove Lewis or Henry knew that under section 6103 the conduct was unauthorized, plaintiff would be allowed to delve into their subjective state of mind at the time of the disclosure. Under the objective standard, however, the plaintiff would be precluded from examining their state of mind. *Harlow*, 457 U.S. at 818–19, 102 S.Ct. at 2738–39.

As the Fifth Circuit noted in *Huckaby v. United States Dep't of the Treasury*, 794 F.2d 1041, 1048 (1986), the holding in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) that certain officials of the executive branch of the United States are entitled to qualified immunity is irrelevant in cases involving the section 7431(b) good faith defense. *Huckaby*, like the case at hand, involved a suit against the federal government for alleged unauthorized disclosures under section 6103. The court explained why good faith under the statute is not governed by *Harlow*:

> *Harlow* recognized a personal immunity from suit, stemming from the need to protect executive officials so that they can perform their functions without undue fear of liability.... Such immunity does not constitute a finding that the officials did not perform the acts that would otherwise lead to liability, ...; it is an expression that public policy would not be served by allowing the officials to be held liable.... In defining a section 7431 cause of action, Congress has already shielded [the official] from liabili-

ty.:... The issue of immunity, therefore, is not involved in this case.

*Id.* (cites omitted).

The *Huckaby* court, nonetheless, found the *Harlow* standard instructive and applied an objective good faith standard. It observed that the issue in the case was whether a reasonable IRS agent would be acquainted with the statute and whether a reasonable agent would have interpreted it to authorize the disclosure in question. Thus, defendant cites *Huckaby* as authority for its proposed analysis of the section 7431 good faith defense.[4]

In *Huckaby*, however, both parties suggested the court apply the *Harlow* standard. It appears the court agreed to apply that standard in part because it was unable to find any legislative history as to Congress' intent as to what good faith means under section 7431. Indeed, the court simply stated that no legislative history existed, that *Harlow* was instructive, and applied an objective good faith standard.

While the statute gives no clue that Congress intended an objective standard, there is ample evidence that the justification for applying an objective standard in immunity cases does not exist in section 7431 cases. The *Harlow* court noted that allowing a plaintiff to inquire into an official's state of mind might entail broad-ranging discovery and subject officials to higher costs of litigation. 457 U.S. at 818, 102 S.Ct. at 2738. Thus, the court adopted the objective standard, in part, to enable defendants to avoid these inquiries.

Section 7431 contains a provision, however, that shows Congress intended plaintiffs be permitted to examine the subjective

---

**3.** Under the *Harlow* standard, the plaintiff could only recover damages if a reasonable official would have known of the statute and that the conduct was unauthorized. Thus, plaintiff's proposed standard is more favorable to plaintiff in that it allows him to prove his case either by showing: 1) a reasonable official would have been acquainted with the statute and would have known the conduct was unauthorized, *or* 2) that the individual official actually *knew* that under section 6103 the conduct was unauthorized even though a reasonable official would not have known this.

**4.** The defendant also cites *Rorex v. Traynor*, 771 F.2d 383 (8th Cir.1985), as support for the prop-

osition that an objective standard should be applied in section 7431 good faith defense cases. *Rorex* involved a suit under the predecessor statute which, unlike section 7431, allowed direct suits against officials who made unauthorized disclosures. While the Eighth Circuit applied the objective standard in *Rorex*, the defendant officials were not claiming good faith based upon section 7217(b) (the predecessor provision, identical to section 7431(b)). Rather, they were asserting a *Harlow* good faith immunity defense where an objective good faith standard must be applied. *Id.* at 386–87.

state of mind of officials disclosing tax information. Section 7431(c) addresses those damages available for a violation of the statute. Included among the available damages is the following: "in the case of a *willful* disclosure or a disclosure which is the result of gross negligence, punitive damages, ..." 26 U.S.C. § 7431(c) (emphasis added). A plaintiff in order to prove "willful" disclosure sufficient to make out a claim for punitive damages clearly would need to present evidence of the official's state of mind at the time of disclosure. Moreover, another justification for application of an objective standard is absent in a section 7431(b) case. One reason *Harlow* applied an objective standard was to protect executive officials so that they could perform their functions without undue fear of liability. *Harlow*, 457 U.S. at 806, 102 S.Ct. at 2731. Again, as the *Huckaby* court observed, such protection is not necessary under section 7431, however, as the individual officials cannot be directly sued under that statute.

The statutory history of the 1976 Tax Reform Act also reinforces plaintiff's construction of the good faith standard as containing both objective and subjective components. As noted earlier, Congress passed the statute in part because it was concerned that income tax information was being used extensively for political purposes in connection with enemies lists and groups targeted for harassment through the IRS. *United States v. Bacheler*, 611 F.2d 443, 446 (3d Cir.1979). This fact adds credence to the theory that Congress intended through the statute to award damages for knowing disclosure; those disclosures Congress most feared involved officials who knowingly disclosed tax information to achieve malicious purposes. *See also Harrison v. United States*, 90–1 U.S. Tax Cas. (CCH) P50,094 (Where the court noted that Congress intended that "disclosures which give rise to civil liability are limited to those situations where the unauthorized disclosure results from a *willful* or negligent failure of the person to comply with the procedures and safeguards provided [under Section 6103]. Joint Committee, General Explanation of the Tax Reform

Act of 1976, Pub.L. No. 94–455, 94th Cong., 2d Sess. at 345 (1976).").

Therefore, the court concludes Congress intended defendants to be liable for unauthorized disclosures where the officials either knew or should have known of section 6103 and where they knew or should have known the disclosure was unauthorized. As factual issues remain as to these issues, the court will deny defendant's summary judgment motion as to its good faith interpretation defense.

Accordingly, based upon the files, records, and proceedings herein,

IT IS HEREBY ORDERED That:

1. Defendant United States of America's motion for summary judgment is DENIED;

2. Partial summary judgment on the issue of authorization under 26 U.S.C. § 6103 is GRANTED in favor of plaintiff Scott McLarty.