**Jennifer LEBARON, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. CV 91–3847 SVW (Ex).

United States District Court, C.D. California.

Jan. 13, 1992.

Kendrick L. Moxon, William D. Katz, Bowles & Moxon, Hollywood, Cal., for plaintiff.

Lourdes G. Baird, U.S. Atty., Mason C. Lewis, Asst. U.S. Atty., Chief, Tax Div., Los Angeles, Cal., Margaret M. Earnest, Robert K. Coulter, Trial Attys., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WILSON, District Judge.

### INTRODUCTION

This is a suit brought by an individual who took courses offered by the Church of Scientology Flag Service Organization ("FSO") against the United States for disclosure of Plaintiff's tax return information in violation of the confidentiality provision of the Internal Revenue Code. 26 U.S.C. § 6103 (Supp.1991). This Court has jurisdiction pursuant to 26 U.S.C. § 7431(a). On Defendant's Motion to Dismiss, or in the alternative for Summary Judgment, the Court will award summary judgment to the Defendant for the reasons stated herein.

### BACKGROUND

The essential facts are undisputed. The United States Internal Revenue Service (the "Service" or "IRS") issued a summons upon FSO as part of an investigation into FSO's continuing status as a tax exempt organization. FSO refused to comply with the summons, and the IRS instituted a

summons enforcement proceeding in federal court. In that proceeding, District Judge Castagna referred two issues to Magistrate Judge Jenkins; whether each of the items requested in the summons were necessary to the Service's investigation, and whether FSO should be allowed to depose various members of the Service in an attempt to show bad faith. *United States v. Church of Scientology Flag Service Organization, Inc.*, 90–1 U.S.T.C. para. 50,019 (M.D.Fla.1989).

On January 25, 1990 the IRS proffered to the Magistrate Judge an exhibit containing certain information regarding Plaintiff's taxes. On April 12, 1990, the exhibit was admitted into evidence in that action. The disclosed information included two letters from Plaintiff's accountants to the Service and a receipt from FSO in the amount of $4000 for counseling services. For the most part, the letters reasserted (after the Service initially denied) Plaintiff's claim to certain business expense deductions for counseling and "job training" services provided by FSO. One letter (the "Greenberg letter") also mentioned a negligence penalty the Service had assessed against Plaintiff and a deduction that Plaintiff had claimed for building supplies unrelated to FSO. Plaintiff's name and social security number were redacted from each of the disclosed documents.

### STANDARD OF REVIEW

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Id.*

### DISCUSSION

The Internal Revenue Code establishes a civil cause of action and provides for damages "[i]f any officer or employee of the United States knowingly, or by reason of negligence, discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103." 26 U.S.C. § 7431(a). Section 6103(a) provides that "[r]eturns and return information shall be confidential ... except as authorized by this title...." 26 U.S.C. § 6103(a). The parties agree that the information disclosed here qualifies as "return information" under the statute,[1] irrespective of the fact that Plaintiff's name and social security number were redacted. *Church of Scientology of California v. Internal Revenue Service*, 484 U.S. 9, 108 S.Ct. 271, 98 L.Ed.2d 228 (1987) (holding that removal of identification from return information does not deprive that information of protection under section 6103); *Long v. Internal Revenue Service*, 891 F.2d 222 (9th Cir.1989).

Defendant's primary contention in support of the Motion is that the disclosure was authorized under Internal Revenue Code section 6103(h)(4), subsections (B) and/or (C), which exempt certain disclosures made in proceedings pertaining to tax administration from the general section 6103(a) prohibition against disclosure:

> (4) A return or return information may be disclosed in a Federal or State judicial or administrative proceeding pertaining to tax administration, but only—
>
> .    .    .    .    .

---

**1.** (2) Return information.—the term "return information" means—

    (A) a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, ... or any other data ... furnished to, or collected by the Secretary ... with respect to the determination of the existence ... of liability of any person under this

title for any tax, penalty ... or other imposition, ...
but such term does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer....
26 U.S.C. § 6103(b)(2) (Supp.1991).

(B) if the treatment of an item reflected on such return [2] is directly related to the resolution of an issue in the proceeding; [or]

(C) if such return or return information directly relates to a transactional relationship between a person who is a party to the proceeding and the taxpayer which directly affects the resolution of an issue in the proceeding;

26 U.S.C. § 6103(h)(4)(B) and (C). Even if the disclosure was not authorized under either of these exceptions, however, Defendant argues further that the United States would not be liable for damages because the disclosure "result[ed] from a good faith, but erroneous, interpretation of section 6103." 26 U.S.C. § 7431(b).

The Court will address each of these grounds for Defendant's motion in turn; first as they apply to disclosure of Plaintiff's deductions for FSO services and, second, as they apply to disclosure of other information contained in the same documents.

## I. THE DEDUCTIONS FOR FSO SERVICES

### A. *Section 6103(h)(4)*

Under both relevant subsections of section 6103(h)(4), the government may properly disclose tax information only in proceedings "pertaining to tax administration." 26 U.S.C. § 6103(h)(4). "Tax administration" includes enforcement and litigation functions under the internal revenue laws. 26 U.S.C. § 6103(b)(4). In this case, Plaintiff's tax information was disclosed to a Magistrate Judge considering certain issues in a proceeding brought by the Service to enforce a summons issued upon FSO. The summons was issued as part of the Service's investigation of FSO's continuing status as a tax exempt organization. Clearly, that proceeding "pertained to tax administration" within the meaning of the statute.

Under subsection (C) of section 6103(h)(4), the tax information must also directly relate to a "transactional relationship" between the taxpayer (Ms. Lebaron) and a party to the relevant tax proceeding (FSO) before the government may disclose it. 26 U.S.C. § 6103(h)(4)(C). In this case, the disclosed receipt shows that Plaintiff and FSO engaged in a transaction in which Plaintiff paid four thousand dollars for FSO services. The disclosed letters describe the benefits Plaintiff gained from those services and show Plaintiff's tax treatment of the payments as business expense deductions (and reflect that the Service had twice disallowed those deductions). Each of the disclosed items clearly relates to this transaction between Ms. Lebaron and FSO, the party in the relevant proceeding.

Having cleared these preliminary hurdles, the key question under subsection (C) becomes whether this transactional relationship between Ms. Lebaron and FSO, as described in the disclosed documents, "directly affects" the resolution of an issue in the summons enforcement proceeding. *See First Western Govern. Sec., Inc. v. United States*, 578 F.Supp. 212, 218 (1984) ("The statute does not require that the disclosure be 'necessary' to the resolution of the proceeding ... only that the disclosure affect the resolution of the issues in the proceeding."), *aff'd.* 796 F.2d 356 (10th Cir.1986). Similarly, under subsection (B), the question is whether Plaintiff's tax treatment of her payments to FSO as business expense deductions is "directly related to" the resolution of an issue in that proceeding.

#### (1) *Subsection (B)*

■ There were two issues before the Magistrate Judge to whom the government disclosed Plaintiff's tax information. The first issue was whether FSO should be allowed to depose various members of the Service in preparation for showing that the Service had initiated its tax examination in bad faith "as part of a nationwide conspiracy to discredit and destroy the Scientology movement." *Flag Service*, 90-1 U.S.T.C. para. 50,019.

---

**2.** It is not entirely clear to the Court that the items disclosed here fit the statutory definition of a "return," as opposed to "return informa-

tion." *See* 26 U.S.C. § 6103(b)(1). Since neither party has suggested otherwise, however, the Court will proceed to apply this section.

To be allowed that discovery, FSO had to make a substantial demonstration, based on meaningful evidence, that the Service abused its discretion when it decided to investigate FSO. Magistrate's Report and Recommendation at 8, *citing In re E.E.O.C.*, 709 F.2d 392, 399 (5th Cir.1983). Conversely, the government's task, in persuading the Magistrate Judge to not allow the discovery, was to show that the Service had a basis for investigating FSO. Judge Castagna's earlier ruling on another issue in the case (made before he referred these two issues to the Magistrate Judge) aided the government in this endeavor. Judge Castagna had ruled that the Internal Revenue Code unambiguously provides that churches may not challenge the reasonableness of the Service's belief that a tax examination is appropriate. *Flag Service*, 90–1 U.S.T.C. para. 50,019, *citing* 26 U.S.C. § 7611(e)(1) and (2). Therefore, it appears that something less than a full showing of "reasonableness" would have been sufficient to persuade the Magistrate Judge to not allow the depositions sought by FSO. Accordingly, any evidence suggesting that the Service had some sort of reason for wanting to investigate FSO could impact the Magistrate Judge's resolution of the discovery issue. The question then is whether the tax information the government disclosed in that action tends to suggest that the Service had some basis for investigating FSO.

The disclosed tax information does suggest as much. Plaintiff was one of four individuals whose tax information was included in an exhibit submitted to the Magistrate Judge. On each of those returns, taxpayers claimed deductions for FSO services. The IRS agent responsible for examining FSO's tax status, Melvin Blough, testified that he could bring in "20, 30 [similar] returns ... if the Court so wishes." Defendant's Motion for Summary Judgment, Exhibit C, at 74. He testified that FSO services were typically described as "staff training" or "employee education" on those returns (and on checks and other documentation submitted with the returns).[3] On audit, some of those payments were even shown to have been made out of corporate accounts.[4]

The significance of such returns to Agent Blough was that they indicated that FSO was serving those individuals' "private interest[s] in their business," raising the question "do they [FSO] have a commercial purpose or do they have a religious purpose?" *Id.* at 74. Although those deductions were typically disallowed when the taxpayers refused to provide documentation, the Service could have determined that further investigation of the nature and content of FSO's services was warranted in light of the number of such returns and the circumstances suggesting that the services were being used for business purposes. In this manner, disclosure of Plaintiff's tax information to the Magistrate Judge, as one example of such returns, would "directly relate to" his decision as to whether the Service had abused its discretion by initiating the investigation of FSO, such that FSO should be allowed to take the requested depositions. Therefore, the government was authorized under subsection (B) of section 6103(h)(4) to disclose Plaintiff's tax information because it directly related to the discovery issue before the Magistrate Judge.

### (2) *Subsection (C)*

The disclosure was also authorized under subsection (C) of section 6103(h)(4) for similar reasons. Under that subsection, the precise question is whether the "transactional relationship" disclosed "directly affects" the resolution of an issue in the relevant proceeding. The General Explanation of the Tax Reform Act of 1976 offers an example of how a transaction

---

**3.** In this case, Plaintiff did not describe in detail how the FSO services benefitted her in her job, other than to say that they "gave her data she needed to use in her business" and were "an aid to [her] in the production of her income." Defendant's Motion for Summary Judgment, Exhibit B, at 66.

**4.** Agent Blough described one example in which a chiropractor paid $136,000 out of a corporate account to FSO for services described on the bottom of the check as "staff training." On audit, the chiropractor refused to provide any documents describing FSO's services.

might be disclosed in a way that would meet this requirement.[5] As in that example, Plaintiff here characterized the item exchanged in the transaction (FSO's services) differently on her tax return than FSO does for tax purposes. Plaintiff said the services provided data that she needed for her business, while FSO asserts to the IRS that its counseling and training sessions are essentially religious services. As in the example, it appears from the tax returns that one or both of the parties may have mischaracterized the item exchanged. As such, the government may properly confront one party with the other's return showing the incongruous tax treatment.[6] *Cf. Heimark v. United States,* 14 Cl.Ct. 643, 649 (1988).

The remaining question under subsection (C) is whether this transactional relationship, disclosed to show the incongruity in tax treatment, "directly affects" an issue before the Magistrate Judge. This Court concluded above that the "disclosure" "directly related to" the discovery issue, as per subsection (B). The reasons given for making that finding also lead the Court to conclude that the "transactional relationship," as just described, would not only "relate to" the resolution of that issue but "directly affect" it, as required under subsection (C). The disclosed tax returns, including Plaintiff's, need only suggest that it was not an abuse of discretion for the IRS to make further inquiry regarding the content of FSO's services. The Court finds that those returns would have that effect on the Magistrate Judge, and thus would directly affect her resolution of the issue.[7]

Under both subsections (B) and (C), the disclosure need only affect "an" issue in a tax proceeding, not every issue. Nevertheless, the disclosure of Plaintiff's tax information describing the FSO courses she took would also affect the other issue before the Magistrate Judge as well.

That issue was whether the documents sought by the Service in the summons, including records relating to FSO's counseling and training services,[8] were "necessary"[9] in order for the Service to determine FSO's tax status. FSO's tax status involved two subissues; (a) whether FSO was entitled to continued tax exempt status under 26 U.S.C. §§ 501(a) and 501(c)(3), and (b) whether FSO was liable for tax on income derived from a trade or business that is "unrelated" to FSO's religious purpose. FSO's tax exempt status under section 501(a) is predicated upon it being organized and "operated exclusively" for religious purposes. 26 U.S.C. § 501(c)(3) (1982 & Supp.1991).

> An organization will be regarded as "operated exclusively" for one or more exempt purposes only if it engages *primarily* in activities which accomplish one or more of such exempt purposes specified in section 501(c)(3). An organization will not be so regarded if more than an *insubstantial* part of its activities is not in furtherance of an exempt purpose.

---

**5.** "For example, the *treatment* on a buyer's return regarding the purchase of a business would be relevant to the seller's tax liability resulting from the sale of the business. The buyer may be *amortizing* what he claims to be a covenant not to compete, whereas the seller may be claiming capital gain treatment upon the alleged sale of 'goodwill.'" S.Rep. No. 938, 94th Cong., 2d Sess. 326 (1976), 1976 U.S.C.C.A.N. 2897, 3755 (emphasis added); *see Heimark,* 14 Cl.Ct. at 648, n. 9 (this example helps explain the "transactional" test of section 6103(h)(4)(C)).

**6.** The real difference between the example and the situation here is the issue(s) in the relevant proceeding. In the example, the issue is the seller's tax liability; here the issues are abuse of discretion and the Service's need for the summoned records. FSO's tax liability is only tangentially related to these issues.

**7.** The Magistrate Judge ultimately recommended that FSO's request for discovery be denied. Magistrate's Report and Recommendation 28.

**8.** Among the categories of records sought in the summons were two which, respectively, requested all documents describing the delivery of auditing (also known as counseling) and training services over a three year period, and all documents indicating the nature, cost, prerequisites and requirements of any course of instruction provided over the same period. Defendant's Motion for Summary Judgment at 3, note 1 (categories 28 and 33).

**9.** 26 U.S.C. § 7611(b)(1)(A) (Supp.1991).

Treas.Reg. § 1.501(c)(3)–1(c)(1) (as amended in 1990) (emphasis added). As to the second subissue, if the Service were to find that FSO's counseling and/or training services constitute an "unrelated trade or business," FSO could be taxed on its income from those services, or perhaps lose its tax exempt status altogether.[10] Once again, the second issue before the Magistrate Judge was whether the records sought in the summons were "necessary" to the Service's investigation of these matters.

In the summons, the Service sought all records describing the delivery, nature, cost, prerequisites and requirements of FSO's auditing, training and other courses. *See, supra,* note 8. Clearly, it would be "necessary" for the Service to have access to FSO's own records in order to determine whether those services were "substantially related" to the exercise of FSO's religious purpose under 26 U.S.C. § 513(a). If they were not substantially related, FSO would owe tax on those proceeds. What the disclosed returns showed was that the Service has a reason to address this question in the first place. As discussed above, the disclosed tax information tends to show that the Service had reason to suspect that FSO's services were being utilized by participants for business purposes inconsistent with FSO's tax exempt status.[11] The government's disclosure of several examples of such returns, including Plaintiff's, would thus directly affect the Magistrate Judge's decision as to whether or not those records were necessary to the Service's investigation.[12]

Therefore, the Court finds that the disclosure in this case would directly affect the issue of the Service's need for the summoned records, in addition to affecting the discovery issue. For both of these reasons, the disclosure was authorized under subsections (B) and (C) of section 6103(h)(4). Defendant is entitled to summary judgment as a matter of law on this issue.

### B. *Good Faith Defense*

■ Even if the disclosure of Plaintiff's deductions for FSO services was not authorized under section 6103(h)(4), the government would not be liable for damages as long as the disclosure resulted from a "good faith, but erroneous, interpretation of section 6103." 26 U.S.C. § 7431(b); *see also Davidson v. Brady,* 732 F.2d 552, 553–54 (6th Cir.1984) (plaintiff must plead facts sufficient to establish bad faith). Although this Court concludes that the disclosure is authorized under section 6103(h)(4), section 7431(b) provides an alternative ground for decision.[13]

Congress has provided no specific guidance on how the courts should evaluate "good faith" under section 7431(b). Defendant argues that the appropriate inquiry is an objective one that "would find officials acting in good faith when 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Huckaby v. United States,* 794 F.2d 1041, 1048 (5th Cir.1986), *citing Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Plaintiff, on the other hand, contends that the inquiry

---

**10.** "The term 'unrelated trade or business' means ... any trade or business the conduct of which is not *substantially related* (aside from the need of such organization for income or funds or the use it makes of the profits derived) to the exercise or performance by such organization of its [religious] purpose...." 26 U.S.C. § 513(a) (1982 & Supp.1991) (emphasis added); *see also* 26 U.S.C. §§ 511–13 (Supp.1991) (imposing upon organizations exempt under section 501 a tax on income derived from a trade or business that is unrelated to the purpose for which exempt status was granted).

**11.** In fact, Agent Blough testified that "the best way to illustrate" the Service's concern behind the request for these records was to look at the tax returns described above, showing deductions for payments to FSO for "staff training" and "employee education" and the like.

**12.** The Magistrate Judge admitted the disclosed returns into evidence and ultimately enforced the summons request for these records. Magistrate's Report and Recommendation at 20.

**13.** Also, the good faith defense is applicable to the disclosure of other information not directly related to FSO's services, discussed below.

must involve both subjective and objective elements. *See McLarty v. United States,* 741 F.Supp. 751, 755–58 (D.Minn.1990) (stating that the government is liable where its officials "either knew or should have known" of section 6103 and where they knew or should have known the disclosure was unauthorized). Under the latter standard, Plaintiff argues that she should be entitled to depose certain officials to ascertain the extent of their subjective knowledge, at the time the disclosure was made, of section 6103 as it applies here. *See* Fed.R.Civ.P. 56(f). Plaintiff believes these depositions would prove that those officials bear animus towards the Church of Scientology and were acting in actual bad faith when they decided to disclose Plaintiff's tax information.

Only the *McLarty* court has interpreted the good faith standard of section 7431(b) to contain a subjective element. Several other courts, including the Fifth and Sixth Circuit Courts of Appeals, have found the rationale the Supreme Court articulated in *Harlow* in support of an objective standard for qualified immunity to be persuasive in this context as well. *Huckaby,* 794 F.2d 1041, 1048 (5th Cir.1986); *Davidson v. Brady,* 732 F.2d at 553–54; *see also Johnson v. Sawyer,* 640 F.Supp. 1126, 1133–34 (S.D.Tex.1986); *Smith v. United States,* 703 F.Supp. 1344, 1350 (C.D.Ill.1989); *William E. Schrambling Accountancy Corp. v. United States,* 689 F.Supp. 1001, 1007 (N.D.Cal.1988), *rev'd on other grounds* 937 F.2d 1485 (9th Cir.1991); *Rueckert v. Gore,* 587 F.Supp. 1238, 1242 (N.D.Ill.1984), *aff'd* 775 F.2d 208 (7th Cir.1985). In *Harlow,* the Supreme Court departed from its previous "knew or should have known" standard for determining when government officials act outside their qualified immunity and instead established a purely objective standard. It did so specifically because lower courts had frequently considered subjective good faith to be an issue of fact not amenable to summary judgment, and as a result many insubstantial claims against government officials had been allowed to proceed to trial. 457 U.S. at 816, 102 S.Ct. at 2737. In this case, Plaintiff makes precisely the argument, albeit under

section 7431(b), that the Supreme Court rejected in the context of qualified immunity. Plaintiff fails, however, to explain why the policy expressed in *Harlow* of avoiding "broad-ranging discovery and the deposing of numerous persons" in insubstantial cases should not apply with equal force in section 7431(b) cases. *See Harlow,* 457 U.S. at 817, 102 S.Ct. at 2737.

The court in *McLarty* did not dispute this policy, but it nevertheless inferred that Congress had intended the tax confidentiality statute to permit plaintiffs to examine the subjective states of mind of officials disclosing tax information. This conclusion rested in part on the fact that punitive damages are available under section 7431(c) for "willful" disclosure of tax information. *McLarty,* 741 F.Supp. at 758. However, punitive damages for willful violations of constitutional or statutory rights are also available in civil rights cases, in which the *Harlow* objective standard for qualified immunity applies. *See e.g., Hernandez–Tirado v. Artau,* 874 F.2d 866, 868 (1st Cir.1989); *Melton v. Oklahoma City,* 879 F.2d 706, 732 (10th Cir.1989), *reh'g en banc granted on unrelated issues* 888 F.2d 724 (10th Cir.1989). In civil rights cases, issues of qualified immunity are typically litigated at the outset, before substantial discovery gets under way. *Harlow,* 457 U.S. at 817–18, 102 S.Ct. at 2738; *DiMartini v. Ferrin,* 889 F.2d 922, 926 (9th Cir.1989), *opinion amended* and *reh'g denied,* 906 F.2d 465 (9th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 2796, 115 L.Ed.2d 970 (1991). Only if the court rules that the defendant is not protected by qualified immunity does the issue of punitive damages arise, and only then need discovery into the defendant's subjective state of mind be taken. These civil rights cases demonstrate that threshold issues of governmental immunity need not be determined by a mixed subjective/objective standard, as opposed to a purely objective one, simply because punitive damages for "willful" misconduct may be an issue later in the case.

The Court also finds the *McLarty* court's reliance on the statutory history of the

1976 Tax Reform Act unpersuasive. *See McLarty*, 741 F.Supp. at 758. While the Court agrees that Congress intended to award damages for intentional, malicious disclosure of tax information, application of a purely objective standard of good faith would not significantly frustrate that goal. In the typical case of intentional, malicious disclosure, the defendant's conduct would certainly not be objectively reasonable and protected by qualified immunity. In fact, it is hard to conceive of a case where an official's conduct could be so willful or grossly negligent as to warrant punitive damages, yet somehow still be objectively reasonable. The courts need not engage in drawn out discovery of officials' states of mind in every case just because such a case could theoretically arise.

■ Therefore, this Court will apply an objective standard of good faith. The issue is whether the disclosure was contrary to clearly established statutory or constitutional rights of which a reasonable person would have known. *See Huckaby*, 794 F.2d at 1048, *citing Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. In this case, those rights are provided by section 6103, and IRS agents and government attorneys can be expected to know of this section. *Huckaby*, 794 F.2d at 1049. Thus, the specific inquiry before the Court is whether the government's interpretation of section 6103 and disclosure of Plaintiff's tax information were contrary to clearly established rights granted by section 6103. *See* 26 U.S.C. § 7431(b).

This Court has found nothing in the statute, no case, nor any IRS policy or regulation that would have suggested to the officials who made this disclosure that their interpretation of section 6103 was objectively unreasonable, much less contrary to clearly established rights under section 6103. Indeed, for reasons already discussed, the Court agrees with the government's interpretation of subsections (B) and (C) of section 6103(h)(4). Not surprisingly then, the Court similarly concludes that the disclosure in this case was not contrary to clearly established section 6103 rights. Even if this Court is shown to be

mistaken in its interpretation of the rights granted under section 6103, however, it would remain to be shown that the rights Plaintiff claims are "clearly established." *See Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. Obviously, the Court would conclude that they are not.

Furthermore, the government is entitled to some slim degree of latitude in this instance where, at the time of disclosure, there were not yet any cases applying the new, stricter rule that only church records "necessary" to determine tax liability could be examined. Magistrate's Report at 11. *See* 26 U.S.C. § 7611(b)(1). The government's attorneys were forced to present evidence to show that the summoned records were necessary to the examination, but without any real guidance as to "how necessary," they had to be. Under these circumstances, the Court is particularly reluctant to now say not only that those officials were in error, but that their error is so obvious that it could not have been made in good faith.

Accordingly, the Court concludes that the United States is not liable for damages because the government's determination that the disclosure in this case would not violate any clearly established rights under section 6103 was reasonable. The government will be granted summary judgment on this issue.

## II. THE NEGLIGENCE PENALTY AND NON–FSO DEDUCTION

■ The Greenberg letter also contained references to a negligence penalty assessed against Plaintiff and to a deduction Plaintiff claimed for building supplies, in addition to the deductions for FSO services already discussed.

Plaintiff contends that the failure to redact these lines from the Greenberg letter constitutes unauthorized disclosure for which the United States is liable under section 6103(a). Plaintiff relies primarily on a statement from the legislative history pertaining to subsections (B) and (C) of section 6103(h)(4) that reads as follows: "Only such part or parts of the third party's return or return information which re-

956

flects the item or transaction will be subject to disclosure both before and in a tax proceeding." *Heimark*, 14 Cl.Ct. at 649, *citing* General Explanation of the Tax Reform Act of 1976, S.Rep. No. 938, 94th Cong., 2d Sess. 326 (1976), 1976 U.S.C.C.A.N. 2897, 3755. The statute itself, however, does not contain this provision, and Defendant plausibly interprets its language to permit disclosure of any return or return information once it is demonstrated that some item on that return or return information meets the requirements of sections 6103(h)(4)(B) and/or (C). The question, then, is whether the United States may be held liable for damages for "over-disclosure" of tax information.

The Court is of the view that Plaintiff's is the more strained reading of the statutory language.[14] Plaintiff's construction could also produce untoward results if followed to the extreme Plaintiff advocates. For example, the disclosure in this case could be said to reveal many things, such as the name and address of Plaintiff's accountants, the fact that she appears to have changed accountants in 1988, and certain food and airfare expenses (including excess baggage charges), in addition to the negligence penalty and deduction for building supplies which Plaintiff complains of. Were any of these "revelations" of any moment, this Court might view Plaintiff's argument differently. *See, e.g., Barrett v. United States*, 795 F.2d 446, 451 (5th Cir. 1986) (holding that summary judgment for the government is inappropriate where the IRS may have unnecessarily disclosed the fact of a criminal investigation against a doctor in a letter sent to hundreds of his patients). However, these innocuous tidbits constitute such a small proportion of

the total disclosure,[15] and are so lacking in prejudice to Plaintiff,[16] that the Court cannot conclude that Congress intended to hold the United States liable for a government attorney's failure to redact them. Therefore, the Court finds that the items disclosed in this case, *in toto*, were authorized for disclosure under subsections (B) and (C) of section 6103(h)(4).

Furthermore, even if the government and this Court are in error on the question of "over-disclosure," the good faith exception of section 7431(b) clearly precludes an award of damages for the disclosure of these items. A reasonable government official engaged in the process of redacting the Greenberg letter could certainly have believed that references to a negligence penalty and a deduction for building supplies would be insufficient to render the otherwise proper disclosure illegal. Thus, the government is not liable for such disclosure. 26 U.S.C. § 7431(b).

CONCLUSION

Because this dispute turns on the meaning of the statutory language of sections 6103 and 7431 as it applies to the disclosure of Plaintiff's tax information, there is no issue of material fact in this case. Summary judgment is therefore appropriate.

For the reasons discussed herein, the Court finds that the disclosure of Plaintiff's tax information in the summons enforcement proceeding was authorized under subsections (B) and (C) of section 6103(h)(4). Alternatively, the Court finds that such disclosure was the result of a good faith interpretation of section 6103, and therefore the government is not liable for damages. 26 U.S.C. § 7431(b). Ac-

14. While section 6103(h)(4)(C) is undeniably ambiguous on this point, the language of subsection (B) appears to permit a return to be disclosed as long as even one item on it directly relates to the proceeding. The Court sees no reason why these two subsections should not be viewed consistently on this question.

15. The Church of Scientology is mentioned in all but one of the numbered items in the Greenberg letter. Even the discussion of the negligence penalty assessed against Plaintiff for 1985 involves the Church. In the letter, Plaintiff's

accountant objected to the penalty on two grounds, one of which was the fact that litigation on the question of whether Church of Scientology donations are deductible was still ongoing at that time.

16. Apparently the disclosure of this information is no source of great distress to Plaintiff. She and her counsel have made a public, federal case out of the disclosure of a negligence penalty that heretofore was apparently known only to the Magistrate Judge, assuming she noticed it.

cordingly, the Court hereby GRANTS Defendant's Motion for Summary Judgment.

IT IS SO ORDERED.